UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal Case No. 06-010 (RWR) |
| | : | |
| THOMAS R. JONES aka | : | |
| CALVIN LORENZO JONES, | : | |
| & SHAMIKA MANLEY | : | |
| Defendants. | : | |
| _____ | : | |

**UNITED STATES' OPPOSITION TO DEFENDANT JONES' MOTION
TO SUPPRESS STATEMENTS AND TANGIBLE EVIDENCE**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully opposes the Motion to Suppress Statements and Tangible Evidence filed by Defendant Thomas R. Jones aka Calvin Lorenzo Jones. In support of its opposition motion, the United States relies on the following points and authorities, and such other points and authorities as may be cited at a hearing on this matter:

**I. Factual Summary**

1. The defendants, Thomas R. Jones aka Calvin Lorenzo Jones, and his co-defendant, Shamika Manley, are charged in a one count indictment with the following crimes: Unlawful Possession with Intent to Distribute 50 Grams or More of Cocaine Base and Aiding and Abetting, in violation of 21 U.S.C. §§ 841(a)(1) & 841(b)(1)(A)(iii), and 18 U.S.C. § 2.

2. At a hearing or trial in this matter, government counsel expects the evidence for these charges to demonstrate substantially as follows: On December 17, 2005, at approximately 1:07 am, officers from the United States Park Police ("USPP") initiated a traffic stop on a gold Cadillac bearing a DC temporary tag for a suspected window tint violation and inoperable

headlight, at 53rd and Fitch Streets, SE, Washington, D.C.  The officers approached the car and observed the defendant, Thomas R. Jones aka Calvin Lorenzo Jones in the driver's seat, and the co-defendant, Shamika T. Manley, in the front passenger seat.  Standing next to the car, the officers detected a strong odor of burnt marijuana emanating from the passenger compartment of the vehicle.  The defendant admitted to recently smoking marijuana inside the vehicle.  He further stated that he had just been released from the Prince George's County Police Department, where he had been arrested on an outstanding warrant.  Both the driver and the front passenger were removed from the car.  The officers conducted a search of the car for contraband at that time.

    3.    On the front passenger floor board of the car, where co-defendant Ms. Manley was seated, officers located a gold bag, inside of which was five thousand nine hundred and sixty dollars ($5,960.00) in United States currency and a brown paper bag containing a clear plastic ziplock bag with large chunks of an off-white, rock-like substance.  The rock-like substance field tested positive for the presence of cocaine base, weighed approximately one hundred twenty-four (124) grams, and had an estimated street value of twelve thousand four hundred dollars ($12,400.00). The defendant, Mr. Jones, was placed under arrest.  On his body, officers found an additional eight hundred ninety-one ($891.00) dollars of United States currency.  Officers also found a small quantity of loose marijuana in the car, and documents containing Mr. Jones' name relating to the ownership and purchase of the Cadillac.

    4.    After receiving the advice of rights and waiving the same in writing, the defendant, Mr. Jones, admitted smoking marijuana about fifteen minutes earlier, and that all of the money and drugs in the gold bag belonged to him.  He stated that he placed the drugs in the

bag without Ms. Manley's knowledge, though she knew about the money. He further stated that he got the crack not long ago, and that he put the crack in the gold bag about ten to fifteen minutes prior to being stopped by the police.

5.      Although Ms. Manley's identification was located within the gold bag, she denied any knowledge of the drugs or money located therein. Mr. Jones was also issued a written warning for the inoperable headlight, and a monetary citation for the window tint violation. Ms. Manley was released from the scene at that time without being charged. She, along with Mr. Jones, was later indicted as a co-defendant pursuant to a superseding indictment.

## II.  Argument

### A.  Introduction

Defendant, Thomas Jones, aka Calvin Lorenzo Jones, now moves to suppress certain inculpatory statements made by him, and any and all tangible evidence seized from the subject vehicle in this case. He asserts that the statements made by him "were the product of custodial interrogation which occurred prior to any Miranda warning being given," and further, that there was "no basis for the warrantless search" of the vehicle. Defendant's Motion to Suppress at Page 1. The statements which the defendant, Mr. Jones, seeks to suppress can be broken down analytically into two areas: those made <u>after</u> arrest but <u>prior</u> to the advice of rights; and, those made <u>after</u> arrest, <u>after</u> the advice of rights, and <u>after</u> the defendant's waiver thereof. For all of the reasons cited below, defendant's Motion to Suppress Statements and Tangible Evidence should be denied.

**B. The Defendant's Spontaneous Pre-Rights Statement Should be Admissible**

Regarding the first area of analysis, statements made by the defendant, Mr. Jones, after he was arrested but before he was advised of his rights, the factual record here will demonstrate that as the defendant was being handcuffed, he spontaneously blurted that, "she don't know anything about anything in the car." Sgt. Johnson, U.S. Park Police, then asked the defendant, "anything about what?" The defendant replied, "anything about the coke."

The Supreme Court has stressed that the Miranda safeguards come into play only when the defendant is subject to both custody and interrogation. Rhode Island v. Innis, 446 U.S. 291, 297 (1980); Beckwith v. United States, 425 U.S. 341, 347 (1975). Thus, in the absence of either factor, Miranda safeguards do not apply. While the initial volunteered and spontaneous blurt of the defendant should be admissible, the government concedes that the issue now before this Court from the pre-waiver standpoint is whether the police officer's question in response to the defendant's spontaneous statement constituted interrogation. The government does not dispute that the defendant, Mr. Jones, was in custody at the time he replied to the officer's question. While the brief and narrow question, "anything about what?" arguably does not rise to the level of "interrogation," and is really more of a response to a stimulus rather than a contemplative thought, for the purposes of this motion, the United States will not dispute that such a question was reasonably likely to elicit an incriminating response, Rhode Island v. Innis, 446 U.S. 291, (1980) and therefore, the United States will concede that the second part of the defendant's pre-rights statement, his reply, "anything about the coke," may not be admissible in the government's case in chief.

**C. The Defendant's Post-Rights Statements Should be Admissible**

Regarding the second area of analysis, <u>after</u> the defendant was arrested, and <u>after</u> the defendant was advised of his rights and waived them, the following colloquy occurred between Sgt. Johnson, U.S. Park Police, and defendant Jones:

Officer: "How long ago were you smoking marijuana?"

Defendant: "About 15 minutes."

Officer: "There is a lot of money and crack in that bag, with her ID in there, whose is it?"

Defendant: "Mine."

Officer: "Did she know about it?"

Defendant: "No. She does not. She knew about the money, but not the crack."

Officer: "When did you get the crack?"

Defendant: "I got the crack not long ago."

Officer: "How much crack is it?"

Defendant: "To tell you the truth, I don't even know."

Officer: "How do you know the crack and money is in there?"

Defendant: "Because I put it there."

Defendant: "She knew it was money, she didn't know about the crack,"

Officer: "How long ago did you put the crack in there?"

Defendant: "After I picked her up, about 10-15 minutes ago."

Defendant: "What am I being charged with?"

Officer: "PWID Cocaine."

5

Defendant: "For that?"

Officer: "Yeah, it's not like a gram or two."

Defendant: "You think that a lot.  Man I stole that stuff."

Since the record will demonstrate that the defendant made all of these statements after being advised of his rights and voluntarily, knowingly, and intelligently, waiving the same, there is no basis in law or fact for their exclusion.[1]

**D. The Defendant Waived His Constitutional Privilege and Made Voluntary Statements**

"A statement is not 'compelled' within the meaning of the Fifth Amendment if an individual 'voluntarily, knowingly and intelligently' waives his constitutional privilege. Colorado v. Spring, 479 U.S. 564, 573 (1987) citing Miranda v. Arizona, 384 U.S. 436, 444 (1966).  "The inquiry whether a waiver is coerced 'has two distinct dimensions.'" Spring, 479 U.S. at 573.

---

[1]  The instant case is not a Missouri v. Seibert, 542 U.S. 600 (2004) situation.  In Seibert, at issue was a deliberate police technique tantamount to a deception strategy whereby the police officer questioned the suspect for thirty to forty minutes at the police station, obtained a confession, gave the suspect a twenty minute break, then gave her Miranda warnings and obtained a signed waiver.  The officer purposefully and consciously made a decision to without the Miranda warnings, question the suspect first, and then give the warnings and repeat the question to obtain the incriminating answer previously given.  Unlike Seibert, the lone question asked here in response to a voluntary statement was almost reflexive in nature, and can not reasonably be construed to be part of a deliberate "police protocol for custodial interrogation that calls for giving no warnings of the rights to silence and counsel until interrogation has produced a confession." Seibert, 542 U.S. at 604.

In Oregon v. Elstad, 470 U.S. 298 (1985), the Supreme Court concluded that even where a suspect, while in custody, has answered unwarned questions from police, the suspect still may validly waive his Miranda rights and provide admissible statements after Miranda warnings." Elstad, 470 U.S. at 314.  See also United States v. Gonzalez-Lauzan, 2006 WL 212224 (11th Cir. (Fla.)); United States v. Aguilar, 384 F.3d 520 (8th Cir. 2004).

> First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. Id.

In the instant case, defendant makes no allegation of coercion by physical violence or other deliberate means calculated to break his will. There is no evidence before the Court that Mr. Jones' will was overborne or that his capacity for self-determination was impaired because of coercive police conduct. See Colorado v. Connelly, 479 U.S. 157 (1986).

The test for voluntariness is whether, under the totality of the circumstances, "coercive police activity" has "overborne" a suspect's "will." Colorado v. Connelly, 479 U.S. 157, 167 (1986). "[P]olice overreaching" is a "crucial element" of an involuntary statement, for "[a]bsent police conduct causally related to the confession, there is simply no basis for concluding that any state actor has deprived a criminal defendant of due process of law." Connelly, 479 U.S. at 163-164. In addition, a court should weigh the effect of the "duration of questioning ... or promises of leniency." Ashcraft v. Tennessee, 322 U.S. 143 (1944).

Using this test, clearly, each of the defendant's statements was voluntary. "This is not a case where the police carried on a lengthy harangue in the presence of the suspect." Rhode Island v. Innis, 446 U.S. 291 (1980). Rather, the only aspect of the defendant's treatment which even approaches a colorable argument for police coercion is the mere fact that he was handcuffed in the police car at the time the waiver was made. The desire of the police officers to insure their safety by having the defendant handcuffed incident to a valid arrest does not render the waiver or statements involuntary.

**E. Probable Cause Existed to Search the Entire Vehicle Including the Gold Bag Contained Therein**

Because vehicles are both mobile and highly regulated, where there is probable cause to believe a vehicle contains contraband or evidence, police need not obtain a warrant to search it. Carroll v. United States, 267 U.S. 132 (1925); New York v. Class, 475 U.S. 106 (1986). A search of an automobile may extend to wherever the probable cause extends, including any and all closed containers in the vehicle to which probable cause exists that they contain contraband or evidence. California v. Acevedo, 500 U.S. 565 (1991). The strong odor of burnt marijuana emanating from the passenger compartment of the car gave the officers probable cause to believe that there were illegal drugs somewhere within the car.

Importantly, the propriety of an automobile search extends to a container belonging to a passenger, even where the probable cause relates to the driver and police know the container belongs to someone other than the driver. Wyoming v. Houghton, 526 U.S. 295 (1999) (a syringe in the driver's pocket gave probable cause to search the vehicle and all containers, including the passenger's purse on the back seat) (emphasis added). "In addition, a car passenger...will often be engaged in a common enterprise with the driver, and have the same interest in concealing the fruits or the evidence of their wrongdoing....A criminal might be able to hide contraband in a passenger's belongings as readily as in other containers in the car, perhaps even surreptitiously, without the passenger's knowledge or permission." Houghton, 526 U.S. at 304-305 (citations omitted). Here, the bag and its contents could belong to defendant Jones, co-defendant Manley, or both. The probable cause to search that bag, however, did not rise or fall on which occupant owned it, or had dominion or control over it.

**F. The Removal of the Occupants from the Car was Proper**

An officer making a traffic stop may order individuals to get out of a vehicle pending completion of the stop. <u>Maryland v. Wilson</u>, 519 U.S. 408, 117 S.Ct. 882 (1997). When officers properly stop a car, they may detain the car and its occupants to check the driver's license and registration, and may require the driver to exit the car. <u>Pennsylvania v. Mimms</u>, 434 U.S. 106 (1977). After a stop occurs and facts develop to give probable cause, the police may legitimately further detain the occupants. <u>Id.</u> Further, where the police have articulable suspicion to stop a car they may take reasonable measures to ensure their safety. <u>United States v. Mitchell</u>, 951 F.2d 1291 (D.C. Cir. 1991). <u>See</u> <u>United States v. Sharpe</u>, 470 U.S. 675, 628 n.3 (1985)(police observation of overloaded pickup truck with camper shell commonly used to transport illegal drugs and evading police provided reasonable suspicion to justify stop for suspected drug use).

### G. The Contraband would have been Inevitably Discovered

Even if this Court should somehow find that some or all of the defendant's statements should be suppressed, such an aberrant result would be unavailing to a claim of suppression as to the tangible evidence. This is due to the fact that the police inevitably would have discovered the bag of drugs through independent lawful means, regardless of the statements made by the defendant on scene. <u>Nix v. Williams</u>, 467 U.S. 431 (1984); <u>United States v. Clipper</u>, 973 F.2d 944 (D.C. Cir. 1992); <u>United States v. Gale</u>, 952 F.2d 1412 (D.C. Cir. 1992). The probable cause engendered by the smell of burnt marijuana provided an independent lawful means for the officers to locate and recover the drugs in this case.

WHEREFORE, for the reasons stated above, the United States respectfully submits that the defendant's Motion to Suppress Statements and Tangible Evidence should be denied.

Respectfully submitted,

KENNETH L. WAINSTEIN
UNITED STATES ATTORNEY
BAR NO. 451058

_____
ROBERT J. FEITEL
ASSISTANT UNITED STATES ATTORNEY
D.C. BAR NO. 433-180
FEDERAL MAJOR CRIMES SECTION
202.353.3706

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that a copy of the foregoing United States' Opposition to Defendant Jones' Motion to Suppress Statements and Tangible Evidence is to be served upon counsel for the defendant Thomas R. Jones aka Calvin L. Jones, Gregory L. Lattimer, Esquire, and counsel for the co-defendant, Shamika Manley, Paul Hunt, Esquire, this 9th day of February 2006.

                                            ROBERT J. FEITEL
                                            ASSISTANT UNITED STATES ATTORNEY